**KELSO, Adm'r. v. SHEPPARD et al.
SAME v. SAME.**

No. 14863—Opinion Filed Nov. 18, 1924.

Rehearing Denied Jan. 2, 1925.

**1. Courts—Judgment of County Court—Collateral Attack—Guardian's Sale.**

County courts of this state have general jurisdiction in probate matters and their orders and judgments will be accorded like force, effect, and legal presumption, of other courts of general jurisdiction, and a guardian's petition to sell real estate of a minor which contains sufficient allegations to challenge the attention of the court in regard to its merits, is sufficient to give the court jurisdiction, and a sale made thereunder cannot be attacked for insufficiency of the petition on a collateral attack.

**2. Guardian and Ward—Sale of Ward's Half Interest in Land—Validity of Appraisement.**

Where a minor owns an undivided one-half interest in certain described lands and an appraisement is returned showing the value of the entire tract to be $800, a sale of the minor's one-half interest at a guardian's sale thereof for $400 is a valid sale, so far as appraisement is concerned, and not in violation of section 1280, Comp. Stat. 1921.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; Frank Mathews, Assigned Judge.

Action by Lee W. Kelso, administrator of the estate of Jennetta Kelso, nee Brown, against J. W. Sheppard et al., and Lee W. Kelso, administrator of the estate of Jennetta Kelso, nee Brown, against J. W. Sheppard et al., consolidated. Judgment for defendants, and plaintiff brings error. Affirmed.

Streeter Speakman, for plaintiff in error.

Hughes, Foster & Ellinghausen, for defendants in error.

Opinion by PINKHAM, C. It was stipulated between the counsel for plaintiff and for the defendants that the same questions of fact are involved in each of the above entitled cases, that the same were consolidated upon the trial thereof, and the same question will be presented to this court upon the appeal by the plaintiff in each of said cases, and that the determination of one of said causes upon appeal will amount to a full determination of all questions to be presented in the other of said causes upon appeal.

The two above cases were tried together and involved the same identical questions.

The parties will be referred to as they appeared in the court below, the plaintiff in error as plaintiff and the defendants in error as defendants.

The plaintiff sought to recover possession of and quiet title to a certain tract of land in Creek county. The trial court rendered judgment against the plaintiff; thereafter the plaintiff died and the case has been revived in the name of the administrator of the estate of the plaintiff.

Motion for a new trial was overruled, exception taken, and the cause comes regularly on appeal by the plaintiff to this court.

For reversal of the judgment the plaintiff submits three propositions, the first of which is: "The petition for the sale of the land in probate court does not contain sufficient allegation to challenge the attention of the court in regard to its merits

and was not sufficient to give the court jurisdiction."

In is contended by the plaintiff in his brief that the petition upon which the probate sale in question was based did not state that "it is necessary, or would be beneficial to the minor that the land be sold."

The petition in question states "that it is ——————— that the hereinafter described real estate should be sold."

It is contended that a blank allegation in this respect is not sufficient to challenge the attention of the court in regard to the merits of the proposed sale. Section 1470, Comp. Stat. 1921, provides that "to obtain an order for such sale the guardian must present to the county court * * *a verified petition therefor setting forth the condition of the estate of his ward and the facts and circumstances on which the petition is founded tending to show the necessity or expediency of a sale."

It is true the petition in question failed to insert the word "necessity" or "expedient" in relation to the reasons for the sale, but the record shows that the court made the following finding:

"The court finds the sale of the real estate belonging to said ward mentioned in said petition and thereafter described is necessary for the purpose of to reinvest the proceeds of the sale of said land to improve the allotment of said minor and to assist in educating and maintaining her and for the best interest of said ward."

An examination of the petition criticised shows that the purpose for which the sale was made and the purposes therein mentioned are all within the provisions of sections 1466, 1467, and 1468, Comp. Stat. 1921. It must therefore be presumed that the court heard evidence which tended to show the necessity or expediency of the sale.

In the case of Welch v. Focht, 67 Okla. 275, 171 Pac. 730, the petition contained the following allegations: "That it is necessary that the hereinafter described portion of said real estate should be sold for the following reasons, to wit:" and then instead of setting forth any reason why the real estate should be sold the petition proceeded to describe the land. It was contended in that case, as in this, that the petition wholly failed to show or set forth any reason why the land should be sold.

The court said:

"There is also practical unanimity among the authorities that judgment of a court of general jurisdiction cannot be collaterally attacked unless the record affirmatively shows want of jurisdiction and every, fact not negatived by the record is presumed in support of the judgment of a court of general jurisdiction, and where the record of the court is silent upon the subject it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did."

"County courts of this state have general jurisdiction in probate matters, and their orders and judgments will be accorded like force, effect, and legal presumption of other courts of general jurisdiction, and a guardian's petition to sell real estate of a minor which contains sufficient allegations to challenge the attention of the court in regard to its merits is sufficient to give the court jurisdiction and a sale made thereunder cannot be attacked for insufficiency of the petition on a collateral attack." Tiger v. Drumright et al., 95 Okla. 174, 217 Pac. 453.

It is further contended by counsel for plaintiff that because of the fact that it was alleged in the petition that the minor had mortgages and cash on hand to the amount of $2,400, and that the annual expense for her maintenance and education was $500, that these allegations negative the theory that it was necessary to sell the land.

In the case of Tiger v. Drumright, supra, the court said:

"It is next contended that even though the petition contained sufficient allegations as to the condition of the estate and the necessarity for the sale, in fact there was no necessity for a sale; that the minor owned other lands than those described in the petition and received an income therefrom amounting to more than the amount stated in the petition as being necessary for his support and education and hence the sale was void because the true condition of the estate was not set out in the petition."

The court quoted from Stuart v. Allen, 16 Cal. 474, 76 Am. Dec. 551, as follows:

"It will be remarked that it is immaterial, so far as this question of jurisdiction is concerned, whether the statements of the petition are true or not; the jurisdiction resting upon the averments of the petition not upon the proofs of them."

It is further said in the opinion:

"We therefore conclude that the question of necessity for the sale and the truthfulness of the statements contained in the petition as to the condition of the estate cannot be questioned in a collateral attack."

We think the petition in question stated

sufficient facts to challenge the attention of the court in regard to its merits, and that plaintiff's contention under the first proposition cannot be sustained.

The second proposition submitted by counsel for the plaintiff is that "the land was sold at private sale for less than 90 per cent. of the appraised value."

A number of decisions of this court are cited in the brief of plaintiff where the rule is announced that the provisions of section 1280, Comp. Stat. 1921, which provides that no sale of lands of minors at private guardianship sale shall be confirmed when the bid is not 90 per cent. of the appraised value, or where there has been no appraisement of such lands within a year prior to the sale is mandatory, and goes to the jurisdiction of the court to make the order of confirmation. Oklahoma Port. Cem. Co. v. Winters, 77 Okla. 36, 186 Pac. 468; Sampson et al. v. Smith et al., 64 Okla. 102, 166 Pac. 422; Glory v. Bagby, 79 Okla. 155, 188 Pac. 881.

It must be, of course, conceded that if the record affirmatively shows that the land in question was sold at private sale for less than 90 per cent. of its appraised value the sale must be set aside under the decisions cited.

It is contended by counsel for defendant that the record not only does not bear out the plaintiff's contention but that it affirmatively shows that the entire tract of land involved and the entire title thereto was appraised at $800, and that a half interest therein was sold for $400.

There was an agreed statement of facts entered into by and between the plaintiff, Jennetta Kelso, nee Brown, by her attorneys of record, on the one hand, and J. W. Sheppard, the defendant, by his attorneys of record, from which it appears that one Wiley Fulsom was a full-blood Creek Indian; that Wiley Fulsom died on or about the 1st day of August, 1906, intestate, unmarried, and without issue, and that he was a resident of that portion of the Indian Territory which is now Creek county, at the time of his death; that one Willie Fulsom was the father of Wiley Fulsom and that Willie Fulsom is a full-blood Creek Indian; that Sallie Fulsom was the mother of Wiley Fulsom and that Sallie Fulsom was a full-blood Creek Indian; that both the said father and the said mother of Wiley Fulsom survived the said Wiley Fulsom; that after the death of Wiley Fulsom and, to wit, on the 16th day of January, 1907, there was selected for and on behalf of Wiley Fulsom and duly allotted to his heirs the following described lands, situate in the county of Creek and the state of Oklahoma, to wit:

"The N.E. ¼ of the S.W. ¼ of sec. 16; and the E. ½ of the S.W. ¼ and the S.W. ¼ of the N. W. ¼ of sec. 17, all in tp. 17 N., range 10 E., the allotment of Wiley Fulsom, deceased;"

—that thereafter patents were duly issued by the United States government and the Creek Nation to the heirs of the said allottee conveying said lands to said heirs; that Sallie Fulsom, the mother of said allottee, died on or about the 4th day of April, 1907, and prior to her death she and the said Willie Fulsom, the father of the said allottee, had separated and were divorced, and that prior to the death of Sallie Fulsom she married one Brown, and that by said marriage Jennetta Brown, now Jennetta Kelso, was born, and that at the time of the death of the said Sallie Fulsom the plaintiff herein, Jennetta Brown, was her only child living, and that she left no other child or children or descendants of children surviving her.

It was further stipulated between the parties that whatever interest Willie Fulsom, the father of said allottee, inherited, if any, in said lands, has heretofore been duly conveyed to the defendant herein, J. W. Sheppard, by warranty deed, and that said deed was duly approved by the county court of Creek county, Okla., prior to the 3rd day of February, 1912, and that the defendant, J. W. Sheppard, is in possession of said land and taking the rents and profits thereof, and that he has so been since the year 1912.

Under this stipulation of facts and the testimony it appears that one-half of the lands involved upon their selection and after the death of the allottee, went in the father's line to Willie Fulsom, and one-half in the mother's line to Sallie Fulsom, from which lines they originally came; that upon the death of Sallie Fulsom, the mother of the allottee, the mother of the plaintiff also, possession of the lands which came to the allottee from Sallie Fulsom descended to her daughter, Jennetta Brown, being an undivided one-half interest therein, and that the other one-half was owned by Willie Fulsom.

This petition for the sale of land by the guardian of the plaintiff, after describing the allotment of Wiley Fulsom, contained the following:

"Wherefore petitioner prays the court that upon hearing had thereon he be au-

thorized to sell an undivided one-half interest of all of said real estate at public or private sale as shall be deemed most beneficial and for the best interests of the said ward."

The appraisers were authorized "to appraise the estate of Jennetta Brown, mentioned and described herein."

It will be seen, therefore, that the petition asks for a sale of an undivided one-half interest in the lands. The appraisers proceeded to appraise the lands by description—not an undivided one-half interest therein— at $800, so that it became simply a question of mathematical calculation to ascertain the value of an undivided one-half interest in the land so appraised, which would be $400.

The record shows that the interest of the minor, being an undivided one-half interest therein, sold for $400, which was more than 90 per cent. of the appraised value of that interest.

We conclude from an examination of the record that the entire lands in question were appraised at the sum of $800, and it being admitted that the minor owned only an undivided one-half interest therein it follows that her interest in these lands could have been found by the court to have been appraised at $400. It is true the proceedings after the petition appear to be proceedings to sell the entire tract, but the proceedings clearly show that such was not the intention, and that only such interest as the minor had in these lands, which was an undivided one-half interest, was the interest that was sold, for which the minor received the full appraised value for that undivided one-half interest.

In the case of Littlehead v. Mount et al., 99 Okla. 225, 227 Pac. 98, it is said in the fifth paragraph of the syllabus:

"Upon confirmation, the probate court, must examine the return and witnesses, and ascertain whether the sale was fairly made, and ascertain the manner by which the property was sold, and the price received for the interest of the minor, and if there has in fact been an appraisement, it will be presumed, though the appraisement may be irregular, that there was sufficient showing made to the court to justify a finding of the court that the property sold for 90 per cent. of its appraised value, and that the sale had been legally and fairly made, unless it appears that the court under no circumstances could so find."

There is, therefore, an obvious distinction between the facts in the instant case and the facts in the Glory-Bagby Case, cited and relied upon by the plaintiff as controlling the present case.

If the appraisers in the instant case had appraised the interest of Jennetta Brown in the lands appraised at $800, and had described that interest in the return of appraisement, as was done in the Glory-Bagby Case, supra, and the lands had been sold for $400, then the sale under the authorities would have been void.

In the Glory-Bagby Case the interest of the minor was described in the return of the appraisers as a fee interest subject to a life estate; while in this case the lands were appraised as a whole.

The court found from the evidence that on or about the 9th day of March, 1912, the qualified and acting guardian of the plaintiff, who was then a minor of the age of 12 years, pursuant to an order of the county court, made, executed, acknowledged, and delivered to the defendant, Sheppard, a guardian's deed in due and regular form, whereby there was sold and conveyed to defendant all right, title, and interest of the plaintiff in and to the lands in question, the same being an undivided one-half interest therein; that said deed was lost or destroyed before the same was placed of record in the office of the county clerk; that the full purchase price bid by the defendant for said interest of the plaintiff in the lands, at the guardian's sale has been fully paid; that the mortgage given by the defendant to the guardian for the plaintiff has been fully paid, with all the interest thereon.

These findings of fact by the trial court are amply sustained by the evidence.

An examination of the record, we think, wholly fails to establish any fraud on the part of the purchaser or the guardian at said sale. The record discloses that the full purchase price for said lands was paid in cash at the date of the delivery of the deed therefor.

We are unable to agree with the last proposition discussed by counsel for plaintiff in his brief to the effect that the transaction was fraudulent for the reason that it was not a sale for cash as required by the statute, and was an attempt to indirectly do the thing that could not be done directly; that is, to sell the minor's land on time payment.

An examination of the record, we think, wholly fails to establish any fraud on the part of the purchaser or the guardian at

said sale. The record discloses to our satisfaction that the full purchase price for said lands was paid in cash at the date of the delivery of the deed therefor, and such was the finding of the trial court.

The plaintiff's half interest in this land was sold for $400. The purchaser of that half interest owned the other one-half interest. The full purchase price was paid therefor. Afterwards a loan of $400 was made and security for the payment thereof given by a mortgage on the entire 160 acres. The loan was repaid in due time with 8 per cent. interest, and paid before the institution of this suit.

We are unable to discover any elements of fraud in this transaction.

Upon the whole record we are of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.