### HARRISON et al. v. ORWIG et al.

No. 19745. Opinion Filed May 12, 1931.

Cornelius Hardy and John Cordell, for plaintiffs in error.

Robt. L. Gordon, H. W. Carver, Warren, Crutcher & Warren, Anglin & Stevenson, Bell & Fellows, Abbott & Rodolf, E. F. Maley, Pryor & Stokes, Rowland & Talbott, and Ramsey, de Meules, Martin & Logan, for defendants in error.

Guy Woodward, amicus curiae.

ANDREWS, J. The parties herein appear in the same order in which they appeared in the trial court, and for convenience they will be hereinafter referred to as plaintiffs and defendants, respectively.

The facts necessary to a determination of the contentions herein made are substantially as follows:

The land herein involved was allotted to Hilly, a female, enrolled as a full-blood member of the Seminole Tribe of Indians, as her distributive share of the tribal lands of the Seminole Tribe of Indians.

Hilly died on the 26th day of March, 1915, leaving as her sole heirs at law, her husband, Jefferson Harrison, who was enrolled as a full-blood Seminole Indian, Emma Sewell, a daughter by a former marriage with Thomas Sewell, she being enrolled as a half-blood Seminole Indian, and Jacob Harrison, June Harrison, and David Harrison, her three sons, each of whom was enrolled as a full-blood Seminole Indian. Each of those heirs inherited a 1-5 interest in the allotment in question.

On April 24, 1913, the county court of Seminole county issued letters of guardianship to Jefferson Harrison, as guardian of Emma Sewell and Jacob Harrison, under probate No. 1608, he being the step-father

of Emma Sewell and the father of Jacob Harrison, both minors being under 14 years of age and in the custody of Jefferson Harrison and their mother Hilly. The mother filed a written waiver and request for the appointment. Notice was given by posting, but no personal notice was given Thomas Sewell, the father of Emma Sewell.

Hilly died on March 26, 1915, and Emma Sewell went to live with her father, Thomas Sewell. On April 24, 1915, Jefferson Harrison resigned as guardian of Emma Sewell. On April 28, 1915, Thomas Sewell, in probate No. 1608, petitioned to be appointed guardian of Emma Sewell, and Emma, being past 14 years of age, filed therein her written nomination of Thomas Sewell as guardian and requested his appointment. Notice thereof was given by posting, and on April 30, 1915, Thomas Sewell was appointed guardian of Emma Sewell and letters were issued to him in probate No. 1608. On June 5, 1915, the county court appointed Jefferson Harrison as guardian of his two children, June Harrison and David Harrison, in probate No. 1891. Those minors were under 14 years of age, their mother was dead, and they were in the custody of their father. On June 17, 1915, Jefferson Harrison, as guardian of Jacob Harrison in probate No. 1608, and as guardian of June Harrison and David Harrison in probate No. 1891, filed in the county court a petition praying for consolidation of probate causes No. 1608 and No. 1891 for the reasons as stated therein:

"Your petitioner further states that said minors are all the children of Hilly, deceased, and that your petitioner is the father of all of said wards; that all the property they possess is an undivided interest in and to their deceased mother's allotment and that it would save costs in both if said probate cases were united in one case."

And on that date the county court made and entered its order, which, with formal parts omitted, was as follows:

"Now on this 17th day of June, 1913, (sic) the petition of Jefferson Harrison, the guardian of Jacob Harrison, under Probate No. 1608 and guardian of June Harrison and David Harrison, under Probate No. 1891, and after due hearing on said matter, the court finds that the said Jefferson Harrison is the father of all of said minors and that all of said minors are domiciled with said guardian.

"That all of said children are the issue of Hilly, deceased, and that their property rights are the same and mutual.

"Wherefore it is ordered that said probate matters in case No. 1608 and case No. 1891,

be united under case number 1891, and that all guardianship proceedings in the former two cases be consolidated and be carried on under No. 1891. Done in open court."

And thereafter the guardianship of Emma Sewell was conducted under probate No. 1608 and the guardianship of Jacob Harrison, June Harrison, and David Harrison was conducted under probate No. 1891.

On August 26, 1927, Emma Sewell, an adult, and June Harrison, Jacob Harrison, and David Harrison, minors, by their father and next friend and acting legal guardian, filed a petition in the district court of Seminole county seeking to recover the land in controversy from the defendants herein and for other relief. The cause was tried and a general finding in favor of the defendants was made and judgment was rendered thereon denying the plaintiffs any relief.

The assignments of error of plaintiffs are presented under six separate contentions, and each will be considered separately.

It is contended that the appointment of Jefferson Harrison as guardian of Emma Sewell was void because no notice was served on Thomas Sewell, her father, and because the record did not disclose that she had a living father, and that this was such a suppression of facts and fraud upon the court as to render the appointment void.

The error, if any, is immaterial, since Jefferson Harrison afterwards resigned as guardian of Emma Sewell and Thomas Sewell, her father, was regularly appointed guardian upon her nomination. Before such appointment, she had become 14 years of age, and the sale proceedings were conducted by Thomas Sewell as guardian, and not by Jefferson Harrison as guardian.

The plaintiffs contend that the appointment of Thomas Sewell as guardian of Emma Sewell in probate No. 1608 was contrary to the statute and illegal and void.

They cite sections 872, 873, 876, 877, and 878, C. O. S. 1921, which provide for docketing cases separately and keeping the records generally. This presents the question as to whether or not section 873, which, referring to the court clerk, provides:

"He shall keep the papers, in each case, separate, carefully enveloped in a wrapper, labeled with the title and number of the case"

—is mandatory or directory, and, if not mandatory, whether or not there was a substantial compliance with the provisions of that section. The correct rule is as follows:

"Those directions which are not of the

essence of the things to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purposes of the statute." 2 Sutherland on Statutory Construction, sections 610 and 611.

The rights of neither Emma Sewell nor David Harrison were, nor could have been, affected in the least by the appointment in the same cause of Thomas Sewell as guardian of Emma Sewell and Jefferson Harrison as guardian of Jacob Harrison. No one of the sections cited prohibits the appointment of a guardian for two or more minors in the same probate case. That practice has long been followed in this jurisdiction. While this court has never, in terms, approved the practice, it has approved a large number of appointments made in that manner. It is not necessary that there be a separate guardianship case for each minor. A guardian may be appointed for two or more minors in the same cause and such appointment is valid.

Where a guardian has been appointed for two or more minors in the same cause and the guardian resigns or is removed as guardian for one of the minors, or where one of the minors arrives at the age of 14 years and desires to nominate a different guardian, the county court may appoint another person as guardian of that minor in the same cause in which the former guardian continues as guardian of the other minor or minors. Such an appointment is valid.

The plaintiffs contend that the consolidation of probate cause No. 1608, in which Jefferson Harrison was the separate guardian of Jacob Harrison and Thomas Sewell is separate guardian of Emma Sewell, which probate cause No. 1891, in which Jefferson Harrison was the joint guardian of June Harrison and David Harrison, without notice to Thomas Sewell, was unauthorized and illegal, null and void.

The consolidation of causes No. 1608 and No. 1891 did not affect the guardianship of Emma Sewell. Neither the petition nor the order can be construed as relating to other than the wards of Jefferson Harrison. Neither the petition nor the order mentions Thomas Sewell, guardian of Emma Sewell. The order shows that it was made upon the petition of Jefferson Harrison for the consolidation of the interests of his wards in both guardianship cases. This left the guardianship of Emma Sewell as it had been, and the sale of her interest in the land was thereafter conducted in probate cause No. 1608. The sale of the land of the Harrison minors was thereafter made in probate cause No. 1891. The record nowhere shows an intention on the part of the court to make Jefferson Harrison and Thomas Sewell joint guardians as contended by plaintiffs.

The petition of Thomas Sewell, asking for authority to sell the interest of Emma Sewell in the land, was based on statutory grounds, among which was "that the annual income therefrom is approximately $2"; "that the annual expense chargeable against the estate of said ward for maintenance and education is approximately $150"; and that the "guardian can use the proceeds derived from the sale of said land in investments for said ward that will yield her a greater return than that received from said land." The decree of the court recited, among other things, that, "upon due consideration of the proofs offered in said matter, the court finds that the sale of the real estate belonging to said ward mentioned in said petition and hereinafter described, is necessary for the purpose of maintaining, supporting, educating, and caring for said ward, and is for the best interest of said ward."

Section 1467, C. O. S. 1921, authorizes a sale to procure funds for reinvestment purposes, and section 1466, C. O. S. 1921, authorizes a sale to procure funds to maintain and educate a ward. The finding of the court constituted a finding of the jurisdictional grounds provided by those sections. Even though the petition failed to allege necessity or expediency for sale, the finding of the court showed the same to exist, and the presumption is that the court heard evidence in support of its finding. Kelso v. Sheppard, 105 Okla. 231, 232 Pac. 81. The sale is not subject to collateral attack where the petition describes the land and pleads any facts required by sections 1457 or 1470, Id. Cook v. Speak et al., 104 Okla. 5, 229 Pac. 1083.

In Tiger v. Drumright, 95 Okla. 174, 217 Pac. 453, this court held:

"County courts of this state have general jurisdiction in probate matters and their orders and judgments will be accorded like force, effect and legal presumption of other courts of general jurisdiction, and a guardian's petition to sell real estate of a minor, which contains sufficient allegations to challenge the attention of the court in regard to its merits, is sufficient to give the court jurisdiction, and a sale made thereunder

cannot be attacked for insufficiency of the petition on a collateral attack. The rule announced in Cowan v. Hubbard, 50 Okla. 671, 151 Pac. 678, and Welch v. Focht, 67 Okla. 275, 171 Pac. 731, followed."

From the second paragraph of the syllabus in the case of Sockey et al. v. Winstock et al., 43 Okla. 758, 144 Pac. 372, we quote the following:

"When the petition filed with the county court contains facts substantially in accordance with the provisions of the statute, the court acquires jurisdiction; and, notwithstanding the proceedings may be irregular and erroneous, the judgment rendered will not be void and subject to collateral attack."

The petition and order for sale were sufficient.

The plaintiffs contend that the notice to hear the petition to sell was insufficient. The record shows that Thomas Sewell, guardian of Emma Sewell, filed his petition for sale on the 26th day of November, 1915, and that the court on that date fixed the time for hearing said petition as December 31, 1915. On the 26th day of November, 1915, Thomas Sewell personally served a copy of the court's order on Emma Sewell, and Jefferson Harrison personally served copies of said order on June Harrison, David Harrison, and Jacob Harrison. Jefferson Harrison and Thomas Sewell each waived notice and consented in writing to the sale. It also appears that Emma Sewell, who was over 14 years of age at the time, was present and testified at the hearing. It is the contention of the plaintiffs that the guardians could not waive notice for their wards and that only the sheriff could serve the notices. They cite Condit et al. v. Condit et al., 66 Okla. 215, 168 Pac. 456, Taylor v. Scott, 83 Okla. 30, 200 Pac. 427, Jefferson v. Gallagher et al., 56 Okla. 405, 150 Pac. 1071, and Bruner v. Nordmeyer, 48 Okla. 415, 150 Pac. 159, in support of their contention. Those are cases wherein the minors were sued in the district or superior court in civil actions. In further support of the contention that county court "process" should be served in the same manner as district court process, plaintiffs cite section 1086, C. O. S. 1921, which provides:

"All process issued by the county court shall be served in the same manner, and by the persons and officers as provided for the service of process of the district court, with the same fees."

Is service of such an order service of "process," and is there a distinction between "process" and notice required in probate proceedings? Section 862, C. O. S. 1921, provides:

"The style of all process shall be: 'The State of Oklahoma.' It shall be under the seal of the court from whence the same shall issue, shall be signed by the clerk, and dated the day it is issued."

A guardian's sale is a special proceeding under articles 7 and 8, chapter 5, C. O. S. 1921 (secs. 1232-1305), and is not a cause of action under section 172, C. O. S. 1921. The orders of the court on a hearing of a petition in a sale proceeding are not required to run in the name of the state; they are not required to be under the seal of the court; and they are not required to be signed by the clerk.

Referring to section 1471, C. O. S. 1921, as to what an order of sale should contain, we find the following:

"* * * The court or judge must thereupon make an order directing the next kin of the ward, and all persons interested in the estate, to appear before the court, at a time and place therein specified, not less than four nor more than eight weeks from the time of making such order unless notice is waived. * * *"

In Armstrong v. Phillips et al., 82 Okla. 82, 198 Pac. 499, on a proceeding for removal of minority, the validity of the notice of application was involved. This court said:

"We will next consider the plaintiff's specification 'that the proceedings to confer upon the plaintiff in error the right of majority are void,' and the alleged reasons that 'no title is given to the proceedings in said notice; the process does not run in the name of the state of Oklahoma; it is not under the seal of the court, neither is it signed by the clerk and dated the day it was issued.' In the consideration of the questions it should be borne in mind that this is not an ordinary civil action, with adverse parties, as defined in section 4644 of the Revised Laws of 1910. It is a 'special proceeding,' as defined in section 4645" (section 173, C. O. S. 1921).

In Burns v. Pittsburg Mortgage Investment Company, 105 Okla. 150, 231 Pac. 887, this court held that the term "process" is used in the Constitution and statutes of this state in the restricted sense and has reference only to that character of process which, under the common law, would run in the name of the king. The reasoning laid down in McKenna v. Cooper (Kan.) 101 Pac. 662, was followed. In that case the court said:

"Notices in proceedings by executors, administrators and guardians to sell real estate are not process."

Section 1472, C. O. S. 1921, requires that a copy of the order be served. It does not require that the copy be certified.

It is provided in section 1478, C. O. S. 1921, that:

"All the proceedings under petition of guardians for sales of property of their ward, giving notice and the hearing of such petitions, * * * must be had and made as provided and required by the provisions of law concerning the estates of decedents unless otherwise specifically provided herein."

Section 1271, C. O. S. 1921, provides for sales by administrators and executors. From that section we quote as follows:

"If all persons interested in said estate do not file in court their written consent to such sale, the county court, at the time and place appointed in such order, * * * upon satisfactory proof of service, mailing or publication of a copy of the order to show cause, and of posting the same, as provided in this article, by affidavit or otherwise, must proceed to hear the petition. * * *"

It does not say that the proof is to be by the return of a sheriff. It is true that section 1403, C. O. S. 1921, provides:

"When a personal notice is required, and no mode giving it is prescribed in this chapter, it must be given by citation"

—and section 1402, C. O. S. 1921, provides:

"The citation must be served in the same manner as a summons in a civil action"

—but neither of those sections is controlling, because section 1472, supra, defines the mode of giving notice by serving a copy of the order. The manner as well as the sufficiency of the service is left to the determination of the county judge.

In the case of Myers v. Harness, 116 Okla. 268, 244 Pac. 1109, there was involved the giving of notice of application for appointment of guardian under section 1431, C. O. S. 1921. That section provides:

"Before making the appointment the judge must cause such notice as he deems reasonable to be given to the relatives of the minor. * * *"

The court held that under the statute actual notice and not constructive notice was necessary, and said:

"* * * The method or manner of giving such actual notice to be such as the county judge deems reasonable."

The notice served upon the minors who were the next of kin of Emma Sewell was sufficient and complied with the law, and it being shown from the order of the court granting authority to sell that publication and posting was made as required by law and by the order of the court, we find that the notice was in all respects as required by law.

As to the sufficiency of the petition filed by Jefferson Harrison for the sale, the record shows that the petition alleged that the three minors had no personal property; that their interest in the land produced an income of only $10 per year; that the annual expense for maintenance and education of said wards was approximately $150 and that it was necessary to sell; that he had no property other than his own property with which to support the wards; that he had three other children by a second marriage, and that it was necessary to sell the land for the support of his wards.

The plaintiffs contend that the petition asked for the sale in order to support the entire family and therefore did not confer jurisdiction upon the court. That contention is not well founded. The petition contained sufficient allegations of fact to confer jurisdiction upon the court. See Sockey v. Winstock, supra, and Tiger v. Drumright, supra. The court found that the sale "was necessary for the purpose of education, maintenance, and support and is for the best interest of said wards." This was a finding of jurisdictional grounds prescribed by section 1466, supra, and cannot be attacked here. See Kelso v. Sheppard, supra, Cook v. Speak, supra, and Tiger v. Drumright, Id.

Copies of the court's order were posted and published. Thomas Sewell waived notice and made affidavit that he served a copy of the notice upon Emma Sewell. This was all that the law requires as to service and the service was valid.

In Luker v. Masterson, 109 Okla. 75, 234 Pac. 727, this court held:

"Where guardian proceedings have been conducted by a county court having jurisdiction, leading up to a confirmation of a sale of the ward's real estate, the sufficiency of the notice or waiver of the hearing upon the application for appointment of a guardian, the guardian's petition for decree of sale, the notice or waiver of hearing upon the petition for decree of sale, the notice or waiver of hearing upon the return of sale, and of the appraisement, is required, and the notice of sale, are all matters for the consideration of the county court, and where a guardian has been appointed, decree of sale made, and an order of confirmation of sale made, followed by execution and delivery of a guardian's deed, the proceedings are not open to a collateral attack in an independent suit to cancel the proceedings."

See, also, Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, to the same effect.

The plaintiffs contend that the purchase by M. S. Youngblood of the interest in the

land belonging to Jefferson Harrison and of five-year leases on the interests of the minors prior to the sales by the guardians "constituted a · fraud upon the court and the guardians, extraneous of the record, in said guardianship' sale proceedings and rendered said sales null and void." We do not agree with that contention. There was no evidence at the trial of this cause as to the value of this land or as to whether or not the land was sold for less than its value. There was no evidence as to any collusion between the parties in taking the leases or that Youngblood even anticipated a sale of the lands at the time of taking the leases. The leases on the land might or might not have increased the sale value of the land. There is nothing in the record that tends to show any fraud. That fraud is never presumed and that the burden of proof is on the party alleging the fraud are old and well founded principles of law.

"It is well settled that fraud is not to be presumed, but must be established by proof, the burden being on the party alleging it." Sapulpa Refining Co. v. Sivals, 92 Okla. 159, 218 Pac. 830.

"Where fraud is charged, it becomes a question of fact and must be proved by the party alleging the fraud, and cannot be inferred from facts which may be consistent with honesty of purpose." Davis v. Howe et al., 99 Okla. 118, 226 Pac. 316. See, also, Garland v. Carpathia Petroleum Co., 99 Okla. 210, 226 Pac. 379.

The statute of limitations was pleaded in this cause and the same was applied against Emma Sewell by the trial court. In view of what we have herein said, it is not necessary to consider that question.

The judgment of the trial court is in all things affirmed.

LESTER, C. J., CLARK, V. C. ·J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., absent.