## DEERE v. GYPSY OIL CO.

No. 20077. Opinion Filed March 29. 1932.

Rehearing Denied Nov. 22, 1932.

238

238

J. S. Severson and S. H. Butler, for plaintiff in error.

James B. Diggs, W. C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, for defendant in error Gypsy Oil Company.

CULLISON, J. Plaintiff instituted suit in the district court to recover certain real property. He alleged that he was a full-blood Creek Indian. That his mother, Sarah Deere, died intestate in possession of the land in controversy and that plaintiff inherited an undivided one-half interest in said tract of land. That a guardian was appointed for this plaintiff April 12, 1912, at which time said plaintiff was a minor of more than 14 years of age, and that under the law he had the right to nominate his own guardian. That he did not nominate Thomas Deere as his guardian, nor was he served with proper notice of such application, and that the order appointing said guardian was null and void.

Plaintiff further alleged that Thomas Deere, as guardian, filed application in the county court for license to sell the interest of plaintiff in said land, but that no suffi-cient notice of said hearing was given, and that said sale and deed issued thereunder are null and void. Plaintiff prayed for a decree of the court canceling all instruments or incumbrances filed against said land, and that said property be turned to him, with an accounting for the rents secured herefrom. Plaintiff also attached to said petition numerous exhibits, consisting of a portion of the probate proceedings brought in question as to the validity thereof.

Defendants' demurrer to plaintiff's petition was sustained by the court on the ground that the petition does not state facts sufficient to state a cause of action.

Plaintiff appeals to this court from the order sustaining said demurrer and presents the following points in support of his appeal:

(1) "That the minor was more than 14 years of age and had the right to nominate his guardian."

Under the law of this state, said question is not to be controverted. The statute provides that when a minor is more than 14 years of age, he shall have the right to nominate his own guardian. However, in considering the demurrer lodged against plaintiff's petition, the petition and the exhibits must be considered in deciding thereon.

The petition alleged that plaintiff was more than 14 years of age and that he was not permitted to nominate his guardian, while attached to said petition as exhibits are part of the instruments filed in the case No. 1499 in the county court of McIntosh county, Okla., entitled: "In the Matter of the Guardianship of Newman Deere, a Minor; Thomas Deere, Guardian." On page 15 of the record is an instrument entitled: "Certificate as to Service and Waiver," in which certificate the court clerk of McIntosh county certifies:

"I further certify that I have searched our bench docket and appearance docket and that they disclose that on the 2d day of April, 1912, a nomination of ward was filed, and that waiver and request of mother and next of kin was filed, which said nomination and waiver are not of record and out of the original files."

In considering the effect of said demurrer upon the petition of plaintiff, the allegations in the petition should be considered in connection with the instruments attached to said petition and made a part of said petition.

We observe that in the petition, plaintiff alleges that he did not nominate his guardian, but we also observe that in the

certificate rendered by the court clerk as quoted, the minor filed a nomination and that a waiver and request of the mother and next of kin was filed in said cause, so that the exhibit to said petition shows that the ward did file a nomination of guardian in said cause.

This court has held that where there are instruments attached to the petition and made a part of the petition as exhibits, and there is a variance between the pleadings and the exhibit, the exhibit must control; that the exhibit became a part of the complaint. First National Bank of Arkansas City v. Jones, 2 Okla. 353, 37 P. 824; Long v. Shepard, 35 Okla. 489, 130 P. 131.

Under the authorities just cited, the statements as contained in the exhibits would prevail over the statements pleaded in the petition, and since the exhibits show that a nomination of guardian was made, there was no defeat in said proceedings, but the appointment of the guardian was valid and binding.

The second question raised by plaintiff is that:

"The proceedings, leading to the sale of the land by the guardian, were void because no proper notice of hearing was given."

The record discloses that the petition filed praying for an order of sale of said real property was a valid petition and sufficient to confer jurisdiction upon the court. The pleadings disclose a defect in the service of notice of hearing on said petition. The matter of the sufficiency of notice in a guardian's sale has been before this court on numerous occasions.

In the case of Luker v. Masterson, 109 Okla. 75, 234 P. 727, this court held:

"Where guardian proceedings have been conducted by a county court having jurisdiction, leading up to a confirmation of a sale of the ward's real estate, the sufficiency of the notice or waiver of the hearing upon the application for appointment of a guardian, the guardian's petition for decree of sale, the notice or waiver of hearing upon the petition for decree of sale, the notice or waiver of hearing upon the return of sale, and of the appraisement, when an appraisement is required, and the notice of sale, are all matters for the consideration of the county court, and, where a guardian has been appointed, decree of sale made, and an order of confirmation of sale made, followed by execution and delivery of a guardian's deed, the proceedings are not open to a collateral attack in an independent suit to cancel the proceedings."

The foregoing decision was affirmed by this court in the recent cases of Harrison v. Orwig, 149 Okla. 54, 299 P. 143, and Riley

v. Jones, 158 Okla. 64, 4 P. (2d) 1070.

This court further held in the case of Harrison v. Orwig, 149 Okla. 54, 299 P. 143, that:

"Notice of hearing a petition for sale of real estate of a minor in guardianship proceedings is not 'process' within the meaning of sections 862 and 1086, C. O. S. 1921."

And further held that:

"A guardian's sale of real estate is a special proceeding and is not a cause of action within the meaning of section 172, C. O. S. 1921."

In the case at bar, the record discloses that after the petition was filed praying for an order of sale of said land, notice was given thereon and an order of sale issued out of the county court,—that a sale was had, return made to the court, and said sale was confirmed by the court and a guardian's deed issued in said cause.

Under the holding of this court in the cases of Eaves v. Mullen, 25 Okla. 679, 107 P. 433, and Luker v. Masterson, Harrison v. Orwig, and Riley v. Jones, supra, where a guardian's sale is conducted by the court and confirmed, said order of confirmation cures all errors in said proceeding leading up to the sale of said property and the confirmation thereof.

In the case at bar, the court had jurisdiction of said matter. A good and valid petition was filed for the sale of the land. Defects occurring in the proceedings leading up to the sale of the property are such defects as should be taken advantage of in the original proceeding. And when no advantage is taken of said defects or proceedings instituted to correct the same, the confirmation of the sale and issuing a deed thereunder cures said irregularities. The sale by a guardian of real property belonging to a minor is not a separate and distinct proceeding such that a defect in the service of notice would destroy the jurisdiction of the county court. The county court already had jurisdiction in said matter, having acquired the same through the appointment of the guardian and the filing of a valid petition praying for an order of sale.

The service of notice is not such a jurisdictional matter as to oust the court of jurisdiction. This court held in the Harrison v. Orwig Case, that notice of such sale is not process within the contemplation of our statutes, and we are led to the conclusion that a defect in notice is only a voidable defect, advantage of which must be taken by proceedings in the original cause.

Plaintiff's third specification of error is that:

"Plaintiff being a full-blood Indian the statute of limitations did not run against his cause of action."

In considering said question of error, we must determine whether the statute of limitations runs against a full-blood Indian whose land was sold through the probate court while said Indian was a minor. Plaintiff contends that the statute of limitations does not operate or run against a cause of action where the party is a full-blood Creek Indian, and contends that under the Acts of Congress of April 26, 1906, and May 27, 1908, the sale of plaintiff's land through the probate court did not divest plaintiff of his right to said land.

Under said acts of Congress under consideration, Congress prescribed rules and regulations in regard to land allotted Indians, and provided means whereby said lands might be sold or leased. Both of said acts have been considered by this court and by the Supreme Court of the United States, and the decisions rendered thereon determine the question under consideration.

In the case of Chupco v. Chapman, 76 Okla. 201, 170 P. 259, this court held:

"Act Cong. May 27, 1908, c. 199, 35 Stat. 312, entitled 'An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes,' is a revising act, and was intended as a substitute for all former acts relating to the subject of such restrictions, and operated to repeal the provisions of Act Cong. April 26, 1906, c. 1876, 34 Stat. 137, and previous congressional enactments in conflict therewith on the same subject. * * *

"Under the provisions of section 9 of the Act of Congress of May 27, 1908, the death of an allottee of the Five Civilized Tribes operated to remove all restrictions upon the alienation of said allottee's land. The first proviso in said section, 'That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee,' imposed a merely personal restriction on the full-blood Indian heirs. The restriction thus imposed was simply an incapacity to convey without the approval of the proper county court, similar to the disability of a minor to sell his lands.

"Lands inherited by full-blood Creek Indian minors from a full-blood Creek allottee are not 'restricted lands' within the purview of the proviso in section 6 of the Act of Congress of May 27, 1908, prohibiting the sale or incumbrance of restricted lands of living minors, except by leases authorized by law, by order of the court, or otherwise.

"Amos Chupco and Katie Chupco, full-blood Creek Indian allottees, died in Hughes county, Okla., leaving surviving both adult and minor full-blood Indian heirs. By virtue of the probate jurisdiction conferred by section 6 of the Act of Congress of May 27, 1908, the probate court of Hughes county, Okla., was authorized to sell the inherited interest of the full-blood Indian minors in the allotments of the deceased allottees in conformity to the procedure for the sale of the lands of minors under the probate laws of the state, said court being the same court that had jurisdiction of the settlement of the estate of the deceased allottees, and the approval by the court of the guardianship sale, with direction to the guardian to execute a deed to the purchaser, was a substantial compliance with that part of section 9 of the act providing: 'That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.' "

Said decision of this court was appealed to the United States Supreme Court and affirmed by that court in 62 Law Ed. 1240, so that the construction placed on said Acts of Congress by this court was approved by the highest appellate court of the land, and becomes conclusive of the questions therein decided.

Said question came before this court again, in the case of Dierks v. Isaac, 114 Okla. 158, 244 P. 750, and this court said:

"In passing the provisions of section 6 of the Act of Cong. May 27, 1908, the jurisdiction of the person and property, such as involved in this action, was placed in the county courts of the state of Oklahoma, and in doing so it was the intent of Congress that both the minors and other persons affected by the exercise of such jurisdiction were to be governed by the rules of law in the probate code determining the procedure and sales thereunder, of which the statute herein involved is a part."

And in the body of the opinion, this court further held:

"It therefore appears to be well settled that the inherited lands of such heirs were not restricted, and they were not personally restricted as to such inherited lands under the proviso of section 9. The only personal restrictions upon such full-blood Indian heirs are the same as those upon other minors of Oklahoma, without regard to Indian blood. This court has held that the inherited land of full-blood Indians were freed of all restrictions under the first provision of section 9 of the Act of May 27, 1908, and that, at most, the proviso to that section was a personal restriction upon full-

blood Indian heirs and not a restriction upon the land, and that the only restriction imposed by, said proviso on full-blood Indian minor heirs was that the probate court should approve the conveyance as that court is required to do in all guardian sales, regardless of the blood of the minor. That being true, it necessarily follows that the statute of limitation that applies to attacks on guardian's sales as to all minors applies to the full-blood minor heirs in relation to their inherited lands.

"In King v. Mitchell, 69 Okla. 207, 171 P. 725, in paragraphs 5 and 6 of the syllabus, it is said:

" 'Under the provisions of section 9 of the Act of Congress of May 27, 1908 (35 Stat. L. 312), the death of an allottee of the Five Civilized Tribes operated to remove all restrictions upon the alienation of said allottee's land. The first proviso in said section, 'that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee,' imposed a merely personal restriction on the full-blood Indian heirs. The restriction thus imposed was simply an incapacity to convey without the approval of the proper county court, similar to the disability of a minor to sell his lands.

" 'Lands inherited by full-blood Creek Indian minors from a full-blood Creek allottee are not 'restricted lands' within the purview of the proviso in section 6 of the Act of May 27, 1908 (35 Stat. 312), prohibiting the sale or incumbrance of restricted lands of living minors, except by leases authorized by law, by order of the court, or otherwise'."

In the case of Tiger v. Brown, 130 Okla. 83, 265 P. 124, this court held:

"A right of action is given and a limitation provided for the bringing of an action in connection with the sale of real estate by a guardian, by the provisions of section 1496, chapter 5, art. 14, under probate procedure, C. O. S. 1921, in the following language.

" 'No action for the recovery of any estate, sold by a guardian, can be maintained by the ward, or by any person claiming under him, unless it is commenced within three years next after the termination of the guardianship, or when a legal disability to sue exists by reason of minority or otherwise, at the time when the cause of action accrues, within three years next after the removal thereof.'

"This section is specific, and the right of action to which the limitation applies relates only to sales of real estate made by a guardian. Said section, therefore, is the applicable limitation statute, and not subdivision 3, section 185, supra. Inasmuch as the plaintiff, under the admitted allegations of the petition, became of age on September 18, 1921, and this action was not commenced until September 29, 1925, or more than three years after the plaintiff became of age, said action was barred, and the trial court properly sustained demurrers of the defendants to plaintiff's petition."

Said question was considered by the United States Supreme Court in the case of Harris v. Bell, 65 L. Ed. 159, at page 165, wherein that court held:

"Of course, the purpose in requiring any approval is to safeguard the interests of the full-blood Indian heir. Where he is a minor, he can convey only through a guardian; and no court is in a better situation to appreciate and safeguard his interests than the one wherein the guardianship is pending. Besides, as a general rule, a guardianship carries with it exclusive power to direct the guardian and to supervise the management and disposal of the ward's property. It is so in Oklahoma. This rule is so widely recognized and so well grounded in reason that a purpose to depart from it ought not to be assumed unless manifested by some very clear or explicit provision. The Act of 1908 contains no manifestation of such a purpose outside the proviso in section 9. That proviso seems broad, but so is the provision in section 6, subjecting the persons and property of minor Indians to local guardianship. As both are in the same act, they evidently were intended to operate harmoniously, and should be construed accordingly. The proviso does not mention minors under guardianship; and to regard its general words as including them will either take all supervision of the sale of their interest in inherited lands from the court in which the guardianship is pending, or subject that court's action to the approval of another court of the same rank. In either event, conflict and confusion will almost certainly ensue and be detrimental to the minor heirs. But, if the proviso be regarded, as well it may, as referring to heirs not under guardianship,—in other words, to adult heirs,—the two provisions will operate in entire harmony, and all full-blood heirs will receive the measure of protection intended. We think this is the true construction."

In the case of Joines v. Patterson, 71 L. Ed. 1194, at page 1198, said court held:

"Under the settled construction given to the seven-year statute of limitations by the courts of Arkansas, it began to run against Patterson when Joines took possession. 'So long as a man is in possession of land, claiming title, however wrongfully, and with whatever degree of knowledge that he has no right, so long the real owner is out of possession, in a constructive as well as an actual sense. It is of the nature of the statute of limitation, when applied to civil actions, in effect, to mature a wrong into a right, by cutting off the remedy. To war-

rant its application in ejectment, the books require color of title, by deed or other documental semblance of right in the defendant, only when the defense is founded on a constructive adverse possession. But neither a deed nor any equivalent muniment is necessary, where the possession is indicated by actual occupation, and any other evidence of an adverse claim exists. The muniment is but one circumstance by which to make out an adverse possession.' Ferguson v. Peden, 33 Ark. 150, 155; Jacks v. Chaffin (1879) 34 Ark. 534, 541; Logan v. Jelks, 34 Ark. 547, 549.

"The Supreme Court of Oklahoma seems definitely to have approved the doctrine that rights of action arising in Indian Territory prior to statehood remained subject to the Arkansas statute of limitations. Patterson v. Rousney, 58 Okla. 185, 202, 159 P. 636; Davis v. Foley, 60 Okla. 87, 88 L. R. A. 1917A, 187, 159 P. 646. And see United States Fidelity & G. Co. v. Fidelity Trust Co., 49 Okla. 398, 408, 153 P. 195; Sandlin v. Barker, 95 Okla. 113, 117, 218 P. 519."

After a careful consideration of the authorities just cited, we arrive at the conclusion:

First. That the land of deceased allottees was free from restrictions relative to alienation.

Second. That the county courts of Oklahoma had jurisdiction of the sale of land belonging to full-blood Creek Indian minors within the jurisdiction of the various county courts.

Third. That inherited land of full-blood Creek Indian minors, when sold through the county courts became subject to all the statute of limitations the same as sales of other minors, whether of Indian b'ood or not.

Fourth. That the statute of limitations operates whether the guardian sale is valid, void, or voidable.

Fifth. That the statute of limitations had run against the plaintiff's cause of action.

Plaintiff further contends that Congress had the right to extend the time for filing said suit, by the Act of Congress, ch. 115, vol. 44, U. S. Stat. L. 240, of the 69th Congress, passed and approved April 12, 1926.

Section 2 of said Act is the section under consideration, and reads as follows:

"The statutes of limitations of the state of Oklahoma are hereby made and declared to be applicable to and shall have full force and effect against all restricted Indians of the Five Civilized Tribes, and against the heirs or grantees of any such Indians, and against all rights and causes of action heretofore accrued or hereafter accruing to any such Indians or their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the state of Oklahoma, and may be pleaded in bar of any action brought by or on behalf of any such Indian, his or her heirs or grantees, either in his own behalf or by the Government of the United States, or by any other party for his or her benefit, to the same extent as though such action were brought by or on behalf of any other citizen of said state: Provided, That no cause of action which heretofore shall have accrued to any such Indian shall be barred prior to the expiration of a period of two years from and after the approval of this act, even though the full statutory period of limitation shall already have run or shall expire during said two years' period, and any such restricted Indian, if competent to sue, or his guardian, or the United States in his behalf, may sue upon any such cause of action during such two years' period free from any bar of the statutes of limitations."

In the case at bar plaintiff was more than 21 years old on April 12, 1919. Under section 1496, C. O. S. 1921, as construed in Tiger v. Brown, supra, said section is applicable in this case.

When plaintiff attained his majority, disability to sue terminated, and the statute of limitations began to run from that date, which, under the allegations in the petition, would be April 12, 1919.

Under section 1496, he had three years after said date to bring said cause of action, or until April 12, 1922. Upon the expiration of said date, plaintiff's rights were barred by the statute of limitation and the title of the owner and holder of said land ripened into a good and valid title.

In connection with the above state of facts, we have carefully considered said act and the purpose and intent of Congress in passing the same, and interpret and construe said act to mean: That an Indian, to whom had accrued a cause of action, but upon which said cause the statute of limitations had not run, could bring a suit thereon within two years from the date of the passage of said act, provided said cause of action was a valid cause of action against which no limitation existed at the time of the passage of said act.

We further hold that said act intended that where a cause of action had accrued to an Indian long prior to the passage of said act, and the various statutes of limitation of the state of Oklahoma had run against said cause of action, and that the same was barred under the said statute of limitation, under such circumstances said cause of action was not revived by said Act of Congress. That it was not the intention of Congress to revive dead causes

of action by the proviso in said act, but it was the legislative intent to preserve to said persons for a period of two years such causes of action as would mature within the two-year period of time. Thus, where an Indian had a cause of action upon which the statute of limitations would run shortly after the passage of said Act of Congress, said Indian would have two years after the passage of said act to bring suit thereon under the saving clause of the proviso, but said proviso does not apply where the statute of limitations has run. This we consider as the logical and reasonable meaning to be given to the language used in said statute.

Therefore, when said act was passed it did not give plaintiff two years to bring said action because the statute of limitations had expired against his cause of action long prior thereto.

The decision of the lower court sustaining defendants' demurrer to plaintiff's petition is affirmed.