## LEE, Adm'r, et al. v. TERRELL.

No. 21830.  March 20, 1934.

Withdrawn, Corrected, Refiled, and Rehearing Denied Dec. 18, 1934.

Application for Leave to File Second Petition for Rehearing Denied Jan. 22, 1935.

Watts & Broaddus, for plaintiff in error.

W. A. Carlile, for defendant in error.

PER CURIAM. This action was commenced in the district court of Sequoyah county July 11, 1925, by William Horace West, as plaintiff, against John G. Terrell et al., as defendants. The suit was brought for the purpose of canceling a sale and guardian's deed made of certain lands allotted to the plaintiff, William Horace West, which sale and deed were made by his guardian, D. M. Copple, while plaintiff was a minor ward of the county court of said county. The plaintiff sought cancellation of the order confirming the sale, the guardian's deed, and for recovery of the land and quieting title thereto, and damages for the use and possession of the land. The plaintiff died testate on November 22, 1925, and the cause was revived in the name of the administrator of his estate and the beneficiaries under his will. Trial was had to the court and a jury March 19 and 20, 1930, and verdict was for the defendant. From the order of the court overruling plaintiffs' motion for a new trial, they have appealed to this court, and the same is now pending for review. The parties will be referred to as they appeared in the trial court.

The plaintiff in his petition states that he became of age July 15, 1924, and that prior thereto he owned certain lands in Sequoyah county, being 96.5 acres, and that while he was under guardianship in the county court of that county, his guardian, D. M. Copple, attempted to sell said lands, and made a purported sale thereof to defendant; that return of sale was made February 28, 1920, showing a sale thereof February 27, 1920, and was set for hearing March 9, 1920; and that upon the hearing the defendant bid $3,500 for the land, and his bid was accepted by the court, and an order confirming the sale thereof to defendant was made and entered on said day, and was filed for record in the county clerk's office May 28, 1920; that his guardian executed and delivered to the defendant a deed conveying said lands to defendant, which was filed for record the same day.

His petition further states that said sale is void, but that, if the court should hold the same merely voidable, he has no means or property other than the land involved and cannot offer to restore to the defendant the amount of actual cash paid to the guardian upon the transaction; and prays judgment for possession of the lands, and declaring the sale, the sale proceedings, the order con-

firming sale and the guardian's deed to be null and void and canceling them of record, and that he have judgment against defendant for $6,000 for the use of the lands for five years from 1920 to 1924, inclusive, and for costs and general relief; and attached as exhibits are records of the proceedings of said county court relating to said matters.

The defendant answered denying generally the allegations of the petition, and claimed that he was owner in fee of the lands described, having acquired the same by the guardianship sale from the plaintiff during minority, and pleads the exhibits to the petition as a part of his answer. He alleges that the sale and all things connected therewith were regular and valid and conveyed to him a good title; and, further, that the cause of action is barred by limitation; that the action is prematurely brought on the part of present plaintiffs; that any action which plaintiff may have had was one against his guardian rather than the defendant, and that said plaintiffs and the said William Horace West, deceased, by their own acts, are estopped from claiming any title or interest in the lands; and asks for judgment against them for costs and general relief.

The allottee and plaintiff, William Horace West, in his lifetime lived with plaintiffs D. M. Copple and wife, Louisa C. Copple. D. M. Copple acted as his guardian in making the original guardianship sale complained of. He obtained and used a portion of the funds derived from the sale for board and maintenance of William Horace West. His ward executed a will naming him and his wife as beneficiaries, so that D. M. Copple and Louisa Copple would receive the benefits of the fruit of this suit if plaintiff prevails. D. M. Copple is in the position of acting as guardian to sell the land, of receiving a portion of the cash received, and received the land in event of cancellation of the deed as one of the beneficiaries of his ward, original plaintiff herein.

In their brief plaintiffs argue two propositions under either of which they assert the sale was void. Under the first of these they assert that "if upon the hearing on the return of sale it was announced in open court by the county judge that additional bids would be received, and that the value of the lease (a 5-year agricultural lease on the land) was $1,000, and either that the purchaser must pay the entire purchase price and $1,000 thereof would be paid by the guardian to the owner of the lease, or that the purchaser must pay the purchase price, less $1,000, which amount he was not to pay on account of the lease, the sale would be void."

And under their second proposition they assert that:

"In addition to the $1,000 mentioned in the preceding proposition, $1,335 of the consideration for the land was never paid to the guardian by the defendant purchaser, and by reason thereof the sale of the minor's land was null and void."

An examination of the record discloses that these issues and contentions of the parties, except the pleas of estoppel and limitation, were fully and completely heard by the trial court and submitted to a jury for decision. It appeared from the evidence that the land had been appraised at only $2,900, and that it was advertised for sale at private sale for cash; that a bid of $2,610 was made, being exactly 90 per cent. of the appraisement; but that before and by the hearing on the return of sale, discovery was made that there was a valid agricultural lease on the land for five years, and some outstanding tax liens also. That bid apparently was dropped, or withdrawn and not considered. Thereupon the county judge opened the matter for sale upon any bids that those present, of whom there seems to have been a goodly number, might offer. The oral testimony goes to the effect that it was agreed between the guardian, the leaseholder, the court, and those present, that the lease was of the value of $1,000; and that the county judge then stated the land would be sold to the highest bidder, and that the successful bidder could either pay $1,000 to the leaseholder and get immediate possession of the land, or let him stay in possession and take credit for that amount upon his bid. That several bids were made in various sums, and the land finally sold to the defendant upon his bid of $3,500, as the order confirming sale and the guardian's deed recite. The tenant remained upon the land, and the $1,000 was credited upon defendant's bid, and he paid the remaining $2,500 in cash to the guardian or his attorneys for the benefit of the ward, and that the same was retained and no tender or offer made thereof to the defendant before filing the suit or before the trial, or at any time.

The plaintiffs contend that under these facts the land was sold for only $2,500, which was less than 90 per cent. of the appraisement, and therefore the sale is void.

Section 1291, Okla. Stat. 1931 (sec. 1282, C. O. S. 1921), reads in part as follows:

"Upon the hearing, the court must examine the return and witnesses in relation to the same * * * and if it appear that a sum exceeding such bid at least ten per cent. exclusive of the expenses of a new sale may be obtained, the court may vacate the sale and direct that another be had; * * * if an offer of ten per cent. more in amount than that named in the return be made to the court in writing, by a responsible person, it is in the discretion of the court to accept such offer and confirm the sale."

The evidence shows and the order confirming the sale recites that the defendant bid $3,500 on the return day for the land, which was $890 more than 90 per cent. of the appraisement, and that the court accepted the bid and made the sale to him. By the statute this matter was committed to the discretion of the county judge, and we find no abuse of such discretion upon his part. When he confirmed the sale, acting in his judicial capacity, it became valid and binding, and is not subject to be set aside in a collateral proceeding or anywhere else under the facts appearing in the record.

In Riley v. Jones, 153 Okla. 64, 4 P. (2d) 1070, the Supreme Court held:

"County courts of this state have general jurisdiction in probate matters and their orders and judgments will be accorded the same force and effect and legal presumptions as those of other courts of general jurisdiction."

And in Deere v. Gypsy Oil Co., 160 Okla. 237, 15 P. (2d) 1086, citing with approval Luker v. Masterson, 109 Okla. 75, 234 P. 727, and Harrison v. Orwig, 149 Okla. 54, 299 P. 143, the Supreme Court says:

"Proceedings in guardian's sale of ward's realty are not open to collateral attack in cancellation suit after confirmation of sale and delivery of guardian's deed."

And in Riley v. Jones, supra, the same court further said:

"When a guardian has been appointed, decree of sale made and order confirming sale made, followed by execution and delivery of guardian's deed, the proceedings are not open to collateral attack in an independent suit to cancel the proceedings."

These, and a multitude of other authorities not necessary to cite here, abundantly declare the law to be that an order of a county court confirming a sale of real estate belonging to a ward of said court is a final order of a court of competent jurisdiction, and when such court has jurisdiction of the subject-matter and of the parties, and proper notice thereof has been given, such order is not subject to collateral attack such as is being attempted in this action. At the most, the proceedings would be only irregular, and the irregularity, if such it was, arose out of the unexpected situation which confronted the court upon the return of sale. The proceedings then had are in substantial compliance with the provisions of the statute in such matters and are not subject to attack in these proceedings. A sale of real estate under an order of sale authorizing the same upon proper petition and order therefor made by a county court upon due notice for a hearing upon return of such sale and upon such hearing when sold upon open bidding to the highest bidder for cash in hand, partakes of the nature of a sale at public outcry, and even if sold for less than 90 per cent. of the appraisement, which was not the case here, would not be subject to attack upon this ground.

But the plaintiffs argue that in effect the sale was made for only $2,500; that in selling it for $3,500, and then paying $1,000 for the lease, or allowing that much credit because of it, a fraud was perpetrated upon the ward which makes the sale void. We cannot agree with this contention upon the facts; but even if that were true, it would amount to only such matter as could not be used for a collateral attack upon the order confirming sale. The county court knew all about it at the time he confirmed the sale.

In Riley v. Jones, supra, the Supreme Court said as to such a contention:

"The fraud which will authorize the court to vacate a judgment must be extrinsic or collateral to the issues tried in the cause wherein the attacked judgment was rendered; it must be such fraud of the prevailing party as to prevent the other from having trial of the issues."

It is therefore concluded that the matter complained of was not extrinsic or collateral to the issues determined by the county court when order confirming the sale was made and entered; and not being extrinsic or collateral thereto, it is not such a matter as may be considered either here or in the trial court in this action.

2. As to the second proposition, the evidence shows that the defendant paid in satisfaction of his bid the following sums: Lease, $1,000; tax and revenue, $103.50; order on purchase of live stock for minor's account, $780, and the balance in cash, $1,266.50, totaling the $3,500. The record further discloses that on March 24, 1920, the guardian

filed a petition asking permission to pay the holder of the lease the $1,000 mentioned, and that the same day the court entered its order authorizing him to do so; that on the same day the guardian filed his petition to invest $780 in purchasing certain live stock listed therein for his ward, and on said day the court made an order authorizing him to do so. That the guardian signed an order to his attorney, Mr. E. M. Fry, to pay to R. E. Boswell or order $780 for said live stock, which order was turned over to a bank at Vian holding a mortgage on said stock. The guardian is shown to be illiterate, unable to sign his name, and could not read writing. But the bank got the money, the mortgage was satisfied of record, and the stock was delivered to the guardian on the day of the sale.

A court of equity is not concerned so much with the manner in which a thing is done as with the fact that it was done. There is no question but that the guardian received for his ward the full benefit of the $3,500 which defendant bid for the land. Equity does not require the doing of a vain and useless thing, merely to go through a certain form or to do a thing in a certain way. If the leaseholder was paid for his lease $1,000, by that sum being paid to the guardian by the purchaser and then immediately paid over to the owner of the lease, or if such sum was paid by the defendant by permitting the holder of the lease to remain upon the land till its tenure expired by limitation, in either event the result would be the same. The land was cleared from that incumbrance as it had been agreed would be done, and the manner of performing that obligation is immaterial in this action. The same is true of the tax lien for $103.50. This was likewise necessary to clear the title to the land, and it was paid for out of the $3,500 which the defendant bid for the land. The record clearly shows that every step of the proceedings was in the open, was either done in open court, or upon order of the court, and that there was neither actual nor constructive fraud anywhere along the line. If the ward did not get the benefit of every cent of the bid, it was not the fault of the defendant, and action therefor should have been against the guardian and his bondsmen rather than the defendant if he did not do so.

3. There is no merit in the contention of the plaintiffs that the attorneys for the guardian did not have authority by virtue of their employment by the guardian and as attorneys in the sale of the land to collect or receive any part of the purchase price therefor, for the statutes of this state otherwise provide. Section 4098, C. O. S. 1921 (Okla. Stat. 1931, sec. 4202), reads:

"An attorney and counselor has power to receive money claimed by his client in an action or proceeding during the pendency thereof or afterwards, unless he has been previously discharged by his client, and upon payment thereof and not otherwise to discharge the claim or acknowledge satisfaction of the judgment."

The record affirmatively shows that attorneys were employed by the guardian for all these matters, and they acted for him therein, brought suit to set aside a tax deed on part of the land, looked after the payment for the cattle bought, and were paid about $350 for their services; and there is nothing to indicate that they were ever discharged. This amount was allowed by the court upon guardian's report in that matter. Certainly this illiterate guardian needed the services of able and honorable attorneys, and the record proclaims the fact that they served him faithfully and well.

4. The third proposition argued by the plaintiff in error concerns the giving of certain instructions and the refusal to give certain others requested by him to the jury upon the trial. This proposition is based upon the contingency that it was a jury case, which defendant contends was a suit in ejectment, and therefore a jury trial was his as a matter of right therein. And the case was tried to a jury, no party objecting thereto.

The primary purpose of plaintiff's action was to cancel and set aside a guardian sale and deed to the land in controversy, and to quiet his title thereto. Such matters are of equitable cognizance, and a jury trial is not a matter of right for their determination. But the plaintiff also asked judgment against defendant for $6,000 for the use and occupancy of the land for five years and for such balance as might remain unpaid of the purchase price, should the deed not be canceled. These were money demands, and therefore to be determined by a jury unless such jury trial was waived by the parties. And when an action involves matters praying for both legal and equitable relief, the court without a jury may first determine the equitable matters, and if thereafter legal matters requiring a jury for their determination remain for decision, they must be so determined unless a jury trial thereof is waived; or the court may in his sound discretion submit the whole case to the jury, especially where no objection is made thereto by any of the par-

ties. In this case that was done by the court. But in such a case the findings of the jury as to equitable matters are only advisory to the court, and he may reject them or adopt them in whole or in part in his own discretion, and is not bound by them. And if the court does adopt them, as was done here, no error is committed thereby. Section 349, Okla. Stat. 1931 (C. O. S. 1921, sec. 531), is as follows:

"Issues both of law and fact may arise upon different parts of the pleadings in the same action. In such cases the issues of law must be first tried unless the court otherwise direct."

And section 350, Okla. Stat. 1931 (C. O. S. 1921, sec. 532), is as follows:

"Law issues tried by court unless referred. Issues of fact in actions for recovery of money or specific property are for jury.

"Issues of law must be tried by the court unless referred. Issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

And section 351, Okla. Stat. 1931 (C. O. S. 1921, sec. 533), is as follows:

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury, or referred as provided in this Code."

And in note to section 351:

"In equitable proceedings jury sits merely in advisory capacity. * * * Mosier v. Walter, 17 Okla. 305, 87 P. 877."

Court may submit all or part of issues in equitable action to jury. Crump v. Lanhan, 67 Okla. 33, 168 P. 43.

Where an equity case is tried to a jury without objection by any party thereto, and the verdict returned by the jury is adopted and approved by the trial judge as his own findings of fact and conclusions of law, and judgment is rendered by the court thereon, and said findings, conclusions, and judgments are such as the court, sitting without a jury, should and would have found, made, and rendered in the case, and are correct in the light of the entire record, no error may be predicated thereon. A search of the entire record herein reveals that there was no error in the judgment rendered under all the facts and circumstances of this case and the law applicable thereto, and we find no substantial error therein.

Other questions are presented in the pleadings and the briefs of the parties, among them being the plea of limitation and of estoppel which are urged by the defendant, and the complaint of the plaintiffs concerning alleged errors in the giving of certain instructions in the trial court and in refusing to give certain others requested by the plaintiffs, and to rulings of the court upon the admission or rejection of evidence upon the trial. It is not necessary to discuss these matters in detail. The conclusions we have reached upon the questions already mentioned are decisive of the case, and attention to these would only serve to lengthen this opinion. If any errors occurred at the trial below, the proper and only legal conclusion possible was reached therein under the record, and under section 3206, Okla. Stat. 1931 (C. O. S. 1921, sec. 2822), we are not at liberty to set aside the judgment or grant a new trial because thereof. It provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or as to error in any matter of pleading or procedure unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

A wide range of inquiry and a complete examination of all the proceedings of the county court in reference to the sale under investigation herein to the defendant was permitted upon the trial in the court below. The record contains as exhibits all the orders, notices, petitions, reports, etc., having connection immediate or remote with those matters. From a careful and complete examination thereof and of the entire record, we are of the opinion that even if the plaintiffs were permitted to attack collaterally the confirmation and sale of the land in question, there is no merit in their contentions; that the sale was made upon fair and honest bids in open court and without any fraud or unfair dealings, and that the defendant fully paid the amount of the bid and that the guardian of the minor received the full benefits thereof; that no fraud, actual or constructive, was attempted, practiced or perpetrated in connection with such sale; and that the trial court committed no error in rendering judgment for the defendant and in overruling plaintiffs' motion for a new trial. The judgment should be affirmed.

The Supreme Court acknowledges the aid of District Judge Miller, who assisted in the

preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.