MERCER et al. v. McKEEL.

No. 29172. Oct. 15, 1940.

Rehearing Denied Dec. 17, 1940.

*108 P. 2d 138.*

W. W. Pryor, of Holdenville, for defendant in error.

RILEY, J. This is the fourth appeal to this court growing out of an action commenced in the district court of Seminole county in 1921, by J. F. McKeel against J. W. Mercer.

The action was numbered 5074, in the trial court, and is referred to in the briefs herein as case No. 5074.

Cause No. 5074 was an action in ejectment, and found its way to this court as McKeel v. Mercer, 118 Okla. 66, 246 P. 619. The nature of the controversy out of which the action arose is briefly stated therein. It is stated therein that Mercer was in possession of the 80 acres of land purchased by him in 1921, at guardian's sale. This is error as to the date of purchase. Mercer purchased at guardian's sale in 1912.

The controversy between Mercer and McKeel arose in 1921. Up to that time the land had comparatively little value and no one had questioned Mercer's title. In 1921, when oil was discovered in the vicinity, the value rose temporarily. Mercer had an opportunity to sell an oil and gas lease covering the land for a bonus of $4,000. McKeel sent his brother to Kansas City and obtained deeds from the allottees conveying the land to McKeel. McKeel paid $1,000 for the deeds and incurred $232.60 expenses.

McKeel placed the deeds of record and he and Mercer could not agree upon conveying the title to Mercer. In the meantime the oil boom passed and sale of the oil and gas lease was lost. McKeel sued Mercer for possession and Mercer counterclaimed for damages for loss of sale of the oil and gas lease.

Trial was had, resulting in judgment in favor of Mercer for $1,177.20.

This judgment was reversed and the cause was remanded with directions. McKeel v. Mercer, supra.

C. F. Green, of Ada, for plaintiffs in error.

On retrial judgment was rendered in favor of McKeel in the sum of $2,000,

without an interest in the mineral rights. On appeal this judgment was reversed as being contrary to the pleadings and evidence. McKeel v. Mercer, 167 Okla. 413, 29 P. 2d 939.

The cause was again tried. Specific findings of fact were made by a jury upholding in substance McKeel's contentions as to the agreement. Judgment was accordingly entered in favor of McKeel for $1,232.60, with interest, and awarding him an undivided one-half interest in the mineral rights. Mercer attempted to appeal to this court, and the appeal was dismissed for the reason that it was not perfected in time. Mercer v. McKeel et al., 177 Okla. 499, 61 P. 2d 191.

After the cause was remanded on the second appeal the pleadings were amended.

J. W. Mercer asked leave of court to file a third amended answer. Minnie Mercer, wife of J. W. Mercer, twice sought leave to intervene and set up her claim that the land involved was the constitutional homestead of J. W. and Minnie Mercer, and that she had never contracted or otherwise agreed in writing to give McKeel any interest in the mineral rights in said land, nor had she joined in any agreement to employ McKeel to acquire deeds from the allottees.

Both applications were denied and the judgment thereafter rendered against J. W. Mercer gave McKeel an undivided one-half interest in the mineral rights in the land, together with the right of ingress and egress, and made the judgment for $1,262.60, interest and costs, a lien upon the land, less the one-half mineral interests decreed to McKeel. That judgment and decree became final when J. W. Mercer's appeal was dismissed. Minnie Mercer did not appeal from either order denying her application to intervene.

July 13, 1936, Minnie Mercer commenced this action. In her petition she alleges in substance that she and J. W. Mercer were at all times mentioned in the petition husband and wife. That in 1912, J. W. Mercer purchased the land in question at guardian's sale; that about the date of the purchase plaintiff and her husband, J. W. Mercer, with their family moved upon the land, and have ever since occupied said land as their homestead, and since said date have never claimed or occupied any other land as their homestead; that defendant J. W. McKeel is claiming some right, title, or interest in said land by reason of the judgment obtained by him against J. W. Mercer in said cause No. 5074, but that whatever right, title, or interest he has or claims in said land is inferior and subject to her homestead rights.

In a second cause of action she realleged her homestead interest in the land, and pleaded that the judgment obtained by defendant McKeel against J. W. Mercer in said cause No. 5074, for $1,262.60, with interest and costs, fixed a lien upon the land involved together with a transfer of an undivided one-half interest in and to the minerals in and under said land; that she did not consent to said judgment or the alienation of said mineral rghts and was not a party to said action, and that said judgment insofar as it affects her homestead rights in and to said property is void and should be canceled.

She prayed for cancellation of said judgment as to her homestead rights and that the homestead rights and right of possession as a homestead of plaintiff in and to said land be quieted in her as against any right, title, interest, or claim of defendant J. W. McKeel.

J. W. Mercer was made party plaintiff, and pleadings were amended in certain particulars.

Defendant McKeel, by answer and amended answer, alleged in substance that while J. W. Mercer did obtain a guardian's deed for said land, he acquired no title whatever; that said deed was void for several alleged reasons, in that said land was ordered sold at private sale for cash, and was sold for

part cash and part credit; that the land involved was two separate tracts allotted to two separate allottees, and was sold for a lump sum; that the land was ordered sold at private sale and there was no appraisement filed in said proceedings for the consideration of the court in the approval of the sale; that no proper notice of sale was given as required by law; that the guardian was never legally appointed for the minors because no notice of petition for appointment of guardian was served on the parents of said minors. Other irregularities in the proceedings were alleged. He then alleged that said land was not and could not, under said sale, become the homestead of plaintiffs because said deed was void and plaintiffs acquired no title whatever thereunder.

As a further defense he alleged:

"Further answering this defendant says that all the questions involved in this case and all the contentions made by the plaintiffs in this case and all the legal questions and all the facts involved in this case have heretofore been fully and completely adjudicated by this Honorable Court and by the Supreme Court of the state of Oklahoma and that no question now presented in this case is open for further investigation, and this defendant pleads said adjudication as a final determination of all of said facts in bar of the right of plaintiffs, or either of them, to further litigate with this defendant, and defendant further alleges that said adjudications were made in cause No. 5074, in this Honorable Court, entitled J. F. McKeel et al., Plaintiffs, v. J. W. Mercer et al., Defendants; that the plaintiff herein, Minnie Mercer, intervened in said cause No. 5074 and set up and asserted the matters and things on which she now relies for recovery herein, and that the plaintiff, J. W. Mercer, repeatedly plead the same matters and things which he relies upon now, all of which will be hereinafter set out."

Trial was had to the court, without a jury, resulting in a judgment and decree canceling and setting aside the judgment and decree theretofore entered in cause No. 5074, insofar as it gave and decreed an undivided one-half interest in and to the mineral rights in said land to McKeel, and sustaining and refusing to cancel or set aside said judgment and decree insofar as the money judgment entered against J. W. Mercer and insofar as it decreed said money judgment to be a lien against the land involved.

Plaintiffs appeal from that part of the judgment and decree denying cancellation of the lien declared by the final judgment in cause No. 5074.

Defendant McKeel by cross-petition appeals from that part of the decree which cancels the judgment and decree entered in cause No. 5074 awarding him an undivided one-half interest in the mineral rights in said land.

The trial court made extended findings of fact and conclusions of law.

Among other things the trial court found that J. W. Mercer purchased the land here involved at guardian's sale and received a guardian's deed therefor and went into possession thereof about May 2, 1912, made valuable and lasting improvements thereon, and that plaintiffs have occupied said property since the 20th day of March "up to and including the present time" as their constitutional homestead under the Constitution and statutes of the state of Oklahoma, and that the record title to said property has always remained in J. W. Mercer.

The uncontradicted evidence is that plaintiffs have been occupying said land and claiming it as a part of their homestead since 1912, and particularly since 1916.

There can be no doubt that the land is the homestead of plaintiffs, and has been such since 1912, if there was sufficient title in J. W. Mercer to sustain a homestead claim.

Defendant contends in effect the ownership coupled with occupancy, with certain exceptions as to occupancy in the way of temporary rental, is essential to the claim of homestead. He contends that Mercer bought the property at guardianship sale, but got no title

284

and could not establish homestead rights as against the paramount owners, the allottees.

As a general rule ownership in fee is not essential in order to establish a homestead right in land. The homestead right is not an estate in land, but a mere privilege of exemption from execution of such estate as the holder has. Any interest in land coupled with the requisite occupancy is sufficient to support a homestead exemption. It may be supported by a life estate, by a leasehold interest, by a tenancy at will or at sufferance, or by a mere possessory interest or equitable title. 13 R. C. L. 566-567.

On this question we need not review the authorities. The question is extensively annotated in 89 A. L. R. 511 to 563, inclusive. In fact one wrongfully in possession, but claiming a right to hold, may impress upon the premises occupied the character of a homestead against creditors and all other persons except the owner of the superior title. Winston v. Hodges, 102 Ala. 304, 15 So. 528; Spencer v. Geissman, 37 Cal. 96; Brooks v. Hyde, 37 Cal. 366; Perry v. Ross, 104 Cal. 15, 37 P. 757; Hill v. First Nat. Bank, 73 Fla. 1092, 75 So. 614.

When McKeel entered into the contract with J. W. Mercer, whereby Mercer agreed to convey to McKeel the undivided one-half interest in the minerals in and under said land, he was contracting for an interest in land which Mercer and his wife were entitled to claim as a homestead as against all the world, including McKeel, with a possible exception of the two allottees. Mrs. Mercer was not a party to that agreement. It is admitted that she was not present and that she never did consent thereto in writing or otherwise. She was not a party to cause No. 5074, in which the undivided one-half interest in the mineral rights in said land was decreed to Mercer.

In Shanks et al. v. Norton, 79 Okla. 93, 191 P. 170, it is held:

"Under section 2, art. 12, of the Constitution of Oklahoma, the owner of a homestead, if married, is without power to sell the same without the consent of his or her spouse given in such manner as prescribed by law."

In Cherokee Nat. Bank et al. v. Riley, 56 Okla. 133, 155 P. 1140, it is held:

"The wife alone, under the laws of Oklahoma, cannot alienate the homestead by an express contract. Hence it follows that she cannot do so by parol declarations or negative silence, or any positive act or failure to act."

This rule is so well established we deem it unnecessary to cite other cases adhering thereto. There are many such cases.

In Sixkiller et al. v. Weete et al., 175 Okla. 204, 51 P. 2d 807, it is held:

"When a husband and wife are living upon property the title to which is claimed by the husband, and both have a homestead claim thereon, an action against the husband alone for the purpose of trying the issue of whether he ever acquired title to said property, the wife not being made a party to said action for the purpose of litigating and determining the homestead interest in the property, is erroneous for a lack of proper parties, the wife being an indispensable party to such action, and any judgment rendered therein against the husband alone does not conclude the wife, and same may be attacked and vacated by the wife at any time."

The latter case is conclusive against the defendant as to the one-half mineral interest on all questions involved in this case, except the question whether Minnie Mercer is precluded from prosecuting this action by her failure to appeal from the order denying her application for leave to intervene in cause No. 5074.

In this connection McKeel contends that the order denying the application of Minnie Mercer for leave to intervene in cause No. 5074, was a final order from which she had the right to appeal. That by her failure to appeal the final judgment and decree rendered in cause

No. 5074, is res adjudicata and conclusive as to her right to set up and claim a homestead interest in the land.

There was no adjudication whatever in the final judgment and decree entered in cause No. 5074, as to the homestead rights of Mr. and Mrs. Mercer in the land in question. Minnie Mercer never became a party to that action.

In Sixkiller v. Weete, supra, we said:

"We are, therefore, of the opinion that when a husband and wife are occupying property owned by the husband, and a suit is instituted against the husband for the purpose of adjudicating that he never had title to said property, the wife because of her homestead interest is an indispensable party to the action; and a judgment rendered against the husband in such an action, where the wife is not a party, is a nullity, so far as the wife is concerned, and may be vacated upon the application of the wife in an action brought by her to establish her homestead interest in the property."

So where husband and wife occupy the husband's land or lands colorably belonging to the husband, claiming same as a homestead, and the object to a suit is to establish an interest in said land by some third person, both husband and wife should be made defendants. Without this the proceedings are erroneous and fruitless.

Therefore, before McKeel was entitled to establish his one-half interest in the minerals in or under said land, in view of the fact that Mr. and Mrs. Mercer were occupying the land together, it was incumbent upon him to make both husband and wife parties defendant, and this we hold necessary, notwithstanding her ineffectual attempt to intervene.

There was no error in vacating the part of the judgment entered in cause No. 5074 decreeing McKeel to be the owner of a one-half interest in and to the mineral rights in said land.

A different rule would seem to apply as to contracts entered into for the purchase of land intended to be used as a homestead with reference to a lien for the purchase price.

In this state a homestead may be acquired by taking title in the husband alone, or in the wife alone, or in both. Where either purchases land for a homestead, he, or she, acts for both. If purchase is made by one and the purchase price is not paid in full, that part thereof remaining unpaid constitutes a lien on the land until paid.

The land is not, under our constitutional provision, exempt from sale or execution for the purchase price, or any part thereof. As trustee of the homestead a husband is authorized, when necessary, to purchase or acquire on credit an outstanding title for the purpose of securing the enjoyment of the homestead right, and this he may do when already in possession under a defective title, with or without the consent of his wife, and when this is done it will be presumed to have been necessary. But this may be rebutted by a showing that the wife or the husband owned the paramount title when such purchase was made, and until it appears that a paramount title was not acquired the consideration agreed to be paid therefor will be treated as purchase money. 13 R. C. L. 566.

Money paid for land by a third person directly to the grantor for the grantee is generally considered purchase money as against the homestead right. 13 R. C. L. 604, 26 Am. Juris. p. 69, § 107, 29 C. J. 867.

That there was a contract between J. W. Mercer and McKeel whereby Mercer employed McKeel to purchase and procure deeds from the allottees for the land, and that Mercer agreed to repay McKeel for whatever the deeds cost and expenses incurred there can be no doubt. That question was fully settled in cause No. 5074.

The questions were submitted to a jury, and the jury found the facts as contended for by McKeel. Both McKeel and Mercer thought at that time Mercer's title was defective. McKeel

claimed that Mercer had no title whatever. Certainly the condition of the record was such that Mercer was unable to consummate the deal for the sale of the oil and gas lease. That there was a defect in the title of Mercer is certain. McKeel furnished the money with which to purchase whatever rights the allottees had in the land. Unless plaintiffs have shown that a title paramount to theirs was not acquired, the money paid for the deeds must be treated as purchase money and the land, though a homestead, is not exempt from the payment of said debt.

Plaintiffs assert, however, that they already owned the land, and that their title was paramount for the reason that the facts show and the court found that the guardian of the two minor allottees was discharged from his trust and said guardianship was closed and terminated March 12, 1914, more than three years before McKeel procured the deeds, and more than three years before he commenced the action, cause No. 5074.

They rely upon the provisions of section 1444, O. S. 1931, title 58, Okla. Stat. Ann., § 836, which provides:

"No action for the recovery of any estate, sold by a guardian, can be maintained by the ward, or by any person claiming under him, unless it is commenced within three years next after the termination of the guardianship, or when a legal disability to sue exists by reason of minority or otherwise, at the time when the cause of action accrues, within three years next after the removal thereof."

In this connection plaintiffs cite Minehart v. Littlefield, 94 Okla. 249, 222 P. 253, wherein it is said:

"The limitation provided by section 1496 commences to run against the person entitled to bring the action from the date of the termination of the guardianship."

Section 1496, therein referred to, is the same as section 1444, O. S. 1931. But plaintiffs quote only a part of what was said concerning that. It was also said:

"The limitation commences to run within three years after the termination of the guardianship, or when a legal disability exists when the cause of action arises, then within three years after the removal of the disability."

In Campbell v. Hickory, 137 Okla. 235, 278 P. 1088, it is held that the right of a minor to institute and maintain a suit for the recovery of his estate which has been sold by a guardian continues for three years after the termination of the guardianship under section 1496, C. O. S. 1921, for five years after the deed has been recorded under subdivision 2, sec. 183, C. O. S. 1921, and for two years after disability is removed under section 184, C. O. S. 1921.

In Deere v. Gypsy Oil Co., 160 Okla. 237, 15 P. 2d 1086, it is said that under section 1496, C. O. S. 1921 (1444, O. S. 1931), where a minor's property has been sold by a guardian he has three years after attaining his majority to commence an action to recover the land.

The record discloses that one of the allottees, Catherine V. Payne, was born October 10, 1900, and the other allottee, Consuello Payne, was born December 29, 1901. They were both females. The elder attained her majority October 10, 1918, and the younger attained her majority December 29, 1919.

Cause No. 5074 was commenced by J. F. McKeel and the two allottees on September 9, 1921, less than three years after the elder of the two allottees attained her majority. The trial court correctly concluded as a matter of law that the action was not barred by the three-year statute of limitations.

Plaintiffs contend that by obtaining an order nunc pro tunc to file the appraisement and by proof as to publication of notice of sale at the guardian's sale they have shown the sale to have been valid, and therefore they had good title and title paramount to that claimed by McKeel and the two allottees in cause No. 5074.

The trial court found that the order to file, nunc pro tunc, the so-called appraisement was obtained without notice to the parties interested.

Plaintiffs have failed to show that the outstanding title purchased by McKeel was not paramount to their title at the time McKeel procured the deeds. It follows that the trial court properly declined to cancel the former judgment decreeing the judgment for $1,262.70, interest and costs, to be a lien on the land involved.

The judgment and decree of the trial court is in all things affirmed. Costs of the appeal and cross-appeal are divided equally.

BAYLESS, C. J., and GIBSON, HURST, and DANNER, JJ., concur.